716 S.E.2d 111

**MRI AT BELFAIR, LLC, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Coastal Carolina Medical Center, Respondents.**

No. 4873.

Court of Appeals of South Carolina.

Heard June 7, 2011.

Decided Aug. 17, 2011.

Rehearing Denied Oct. 20, 2011.

568

John F. Beach and John J. Pringle, Jr., of Columbia, for Appellant.

Ashley C. Biggers, Carlisle Roberts, and Kristi L. Pawlowski, of Columbia, for Respondent South Carolina Department of Health and Environmental Control; Travis Dayhuff and Holly G. Gillespie, of Columbia, for Respondent Coastal Carolina Medical Center.

WILLIAMS, J.

On appeal, MRI at Belfair, LLC (Belfair) contends the Administrative Law Court (ALC) erred in finding Coastal Carolina Medical Center's (Coastal) changes to its proposed MRI project were not substantial, and, therefore, not a new

project under South Carolina Code of Regulations 61–15 section 605 (Supp.2010). Specifically, Belfair contends the ALC (1) failed to properly apply the relevant statutory and regulatory provisions governing the issuance of a certificate of need (CON); (2) erred in finding Coastal's changes were not substantial when Belfair presented substantial evidence to the contrary; (3) failed to apply the proper burden of proof; and (4) erred when it failed to find Coastal's CON for the MRI project was voided by the transfer of ownership from Coastal to another entity. We affirm.

## FACTS

Coastal is a forty-one unit hospital located near Interstate 95 in Jasper County, South Carolina. Belfair is a freestanding imaging facility, located approximately 13.8 miles away in Beaufort County, South Carolina. Belfair provides magnetic resonance imaging (MRI) services for Beaufort and Jasper Counties. Dr. Albert J. Borelli, Jr., a radiologist, is the owner of Belfair. Belfair competes with Coastal for MRI services. Pursuant to the South Carolina Certificate of Need and Health Facility Licensure Act [1] (the CON Act), Belfair is an "affected person" [2] and thus is able to contest the issuance of Coastal's CON pursuant to the CON Act.

On May 7, 2004, Coastal submitted an application for a CON to South Carolina Department of Health and Environmental Control (DHEC) to construct a fixed MRI suite onto its existing hospital in Jasper County pursuant to the 2003 State Health Plan [3] (the Plan). Coastal's application proposed that Coastal would purchase a new 1.5 tesla General Electric MRI unit and house it in an addition to be constructed at the

---

1. *See* S.C.Code Ann. §§ 44–7–110 to –385 (2002 & Supp.2010).

2. Specifically, Belfair is a "person[ ] located in the health service area in which the project is to be located and who provide[s] similar services to the proposed project...." S.C.Code Ann. § 44–7–130(1) (2002).

3. The State Health Plan is required by the CON Act. The Plan contains specific standards and information for health care facilities and health care equipment. DHEC may not issue a CON unless an application complies with the Plan, project review criteria, and other regulations. *See* 24A S.C.Code Ann. Regs. 61–15 § 801 (Supp.2010).

hospital. DHEC granted the CON to Coastal on November 22, 2004.

On November 24, 2004, Belfair requested a contested case hearing to challenge DHEC's issuance of the CON to Coastal on the grounds that the MRI project did not satisfy the project review criteria.[4] After an evidentiary hearing, the ALC granted partial summary judgment to Coastal and DHEC in an order dated November 10, 2005. The ALC determined a CON was appropriate because an on-site MRI was necessary to make MRI services "available" to Coastal's inpatients and emergency room patients under the Plan. Belfair appealed to the South Carolina Board of Health and Environmental Control (the Board), which affirmed the ALC's order. After certification from this court, our supreme court held the Board erred when it determined Coastal did not have to establish compliance with the project review criteria. *MRI at Belfair, LLC v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 1, 9–10, 664 S.E.2d 471, 475 (2008). The supreme court reversed and remanded for a determination on the sole issue[5] of whether Coastal's application complied with the project review criteria. *Id.* at 10, 664 S.E.2d at 476. On remand, the ALC consolidated Belfair's initial case with the current case before this court. Upon motion of Belfair and with consent of Coastal and DHEC, Belfair conceded Coastal's MRI project, as set forth in its CON application, satisfied the relevant project review criteria. Accordingly, the ALC dismissed Belfair's initial case and proceeded on Belfair's claim of whether Coastal's amendments[6] to its MRI project were substantial,

---

4. DHEC considered the following project review criteria in determining whether a CON was appropriate in this case: (1) community need; (2) distribution/accessibility; (3) cost containment; (4) acceptability; (5) financial feasibility; and (6) adverse impact. *See* 24A S.C.Code Ann. Regs. 61–15 § 802 (Supp.2010).

5. The supreme court affirmed the Board's finding that the Plan standards for MRI services did not violate state statutes on CONs. It also affirmed the Board's conclusion that substantial evidence existed to support Coastal's need for an onsite MRI unit. *MRI at Belfair*, 379 S.C. at 9–10, 664 S.E.2d at 475–76.

6. Specifically, Coastal sought a determination from DHEC as to whether its plan to convert its mobile MRI unit to a fixed MRI unit was a substantial change to the originally approved project. DHEC deter-

thereby creating a new project pursuant to section 605 of South Carolina Code of Regulations 61–15.

After hearing from the parties, the ALC concluded the amendments to Coastal's MRI project were not substantial; therefore, the amended project was not a new project under section 605, and Coastal's CON was not void. This appeal followed.

## STANDARD OF REVIEW

■ Appeals from the ALC are governed by the Administrative Procedures Act (APA).[7] Pursuant to the APA, this court may reverse. or modify the ALC if the appellant's substantial rights have been prejudiced because the administrative decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by an error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. S.C.Code Ann. § 1–23–380(5) (Supp.2010). "As to factual issues, judicial review of administrative agency orders is limited to a determination [of] whether the order is supported by substantial evidence." *MRI at Belfair,* 379 S.C. at 6, 664 S.E.2d at 474.

## LAW/ANALYSIS

### I. Application of Statutory and Regulatory Provisions

■ Belfair contends the ALC erred in applying the project review criteria instead of certain statutory and regulatory provisions as part of its substantial change analysis. Specifi-

---

mined this amendment was not a substantial change because the location of the project did not change, the cost of the project decreased, and the 1.5 tesla mobile MRI was substantially the same as the 1.5 tesla MRI proposed in Coastal's CON application. Belfair requested the Board to review DHEC's staff decision, which the Board declined to do, prompting Belfair's request for a contested case hearing before the ALC.

7. *See* S.C.Code Ann. §§ 1–23–310 to –400 (2006 & Supp.2010).

cally, Belfair claims the ALC improperly considered the project review criteria[8] to approve Coastal's amended MRI project and thereby excused substantial changes to the MRI project that would have otherwise resulted in voiding the CON. We disagree.

Initially, we note the purpose of the CON Act "is to promote cost containment, prevent unnecessary duplication of health care facilities and services, guide the establishment of health facilities and services which will best serve public needs, and ensure that high quality services are provided in health facilities in this State." S.C.Code Ann. § 44–7–120 (2002). To help achieve this purpose, an applicant is required to obtain a CON before undertaking a project prescribed by the CON Act. *See* § 44–7–120(1).

South Carolina Code of Regulations 61–15 section 801 states that "[t]he [project review] criteria listed in Section 802 are to be used in reviewing all projects under the Certification of Need program." Additionally, an application for a CON "*must* address all applicable standards and requirements set forth in departmental regulations, *Project Review Criteria of the department,* and the South Carolina Health Plan." S.C.Code Ann. § 44–7–200(A) (Supp.2010) (emphasis added). Once issued, a CON is "valid only for the project described in the application including location, beds and services to be offered, physical plant, capital or operating costs, or other factors as set forth in the application, except as may be modified in accordance with regulations." S.C.Code Ann. § 44–7–230(A) (2002). If modifications occur after DHEC grants a CON, "[DHEC] will decide whether or not the amendment is substantial and thereby constitutes a new project." 24A S.C.Code Ann. Regs. 61–15 § 605 (Supp.2010).

Here, the ALC was asked to determine whether Coastal's modifications to the MRI project were substantial. The ALC stated in its final amended order,

> Review of this issue requires a comparison of the amended project to the original project proposed in the CON applica-

8. The project review criteria DHEC applied and the ALC subsequently considered were (1) need; (2) accessibility/distribution; (3) cost containment; (4) acceptability; (5) financial feasibility; and (6) adverse impact.

tion to determine whether the amendment is substantial.... In making that determination, I find that consideration of the project review criteria is relevant. In other words, whether the amendments to the project substantially change the project's compliance with the relevant project review criteria is pertinent in determining whether amendments to this permit were substantial under Section 605.

Subsequently, in the ALC's order denying Belfair's motion for reconsideration, the court expounded on why consideration of the project review criteria was appropriate. The ALC stated, "In making that determination in this contested case, it is apodictic that the ALC may consider properly admitted relevant evidence.... Following that reasoning, this [c]ourt [ ] included an analysis of whether the amended project meets those same project review criteria it originally met *in substantially the same way.*" (emphasis in original). We construe the above-quoted language as a permissible comparison of the original MRI project's compliance with the project review criteria to the amended MRI project's compliance with the same criteria. We find this comparison proper in determining whether Coastal's changes were "substantial" under section 605.

We are not persuaded by Belfair's argument that consideration of the project review criteria is statutorily prohibited by section 44–7–230(A). First, as a prerequisite to obtaining a CON from DHEC, section 44–7–200 expressly requires an applicant to address how its project will comply with the relevant project review criteria. *See* § 44–7–200 (2002 & Supp.2010). Once approved by DHEC, a CON is "valid only for the project described in the application including location, beds and services to be offered, physical plant, capital or operating costs, or *other factors as set forth in the application,* except as may be modified in accordance with regulations." § 44–7–230(A) (emphasis added). In addition to reviewing certain specific factors enumerated in section 44–7–230(A), we find it logical that a review of "other factors as set forth in the application," which necessarily includes the project review criteria, to also be appropriate when determining whether a CON is valid. Accordingly, if satisfaction of the project review criteria is a statutory prerequisite to obtaining a CON, we find any change that would impact the applicant's ability to

comply with the same criteria as relevant evidence on whether the change is substantial enough to create a new project.

Moreover, in addition to the project review criteria, the ALC considered other factors from section 44–7–230(A) to support its conclusion that Coastal's CON was valid despite its amendments to the project. Regarding location, the ALC found despite the MRI unit being located adjacent to the hospital instead of inside the hospital, the MRI unit was "nevertheless built to be an integral part of the hospital" and the "distance between the emergency room and [ ] Coastal's MRI unit would [not] reduce the standard of care of emergency room patients . . . ." The ALC also considered any differences in the services to be offered as well as the physical layout of the project when it addressed all the clinical and operational issues Belfair claimed were substantial under the amended project. Regarding the services offered by Coastal, the ALC noted the maximum gradient amplitude would be slightly lower under the amended project, which would affect the rate at which the MRI completes a scan. However, this slight decrease in gradient strength would only increase a scan by approximately sixty seconds, which "would not increase the wait time for patients since Coastal's volume is approximately four scans per day." Furthermore, the lack of MRI-safe monitoring equipment would not preclude Coastal from scanning unstable patients "if the radiologist and patient's physician determine the patient can be safely removed from monitoring during the MRI scan." In addition, the ALC addressed the difference in the physical layout of the amended project when it concluded changes in how patients would access the MRI unit would not make the MRI less safe than the proposed MRI.

Last, testimony elicited at the contested case hearing supports the ALC's decision to consider the project review criteria in its substantial change analysis. Ms. Tibshrany, a former CON reviewer for DHEC, testified regarding what DHEC considers in its substantial change analysis. When asked how the project review criteria identified as important in the original CON application factors into the substantial change determination, she stated, "They would still be relevant. We're looking to see that the changes that are being made to the project don't affect the initial criteria that were

deemed to be important at the time of review." She also testified the applicant is still required to meet the same project review criteria as in the original application if changes are made. Because DHEC's interpretation in this instance was not contrary to the plain language of section 44–7–230(A) or section 802 of Regulation 61–15, we find the ALC properly deferred to DHEC in this instance. *See S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control,* 363 S.C. 67, 75, 610 S.E.2d 482, 486 (2005) ("Courts defer to the relevant administrative agency's decisions with respect to its own regulations unless there is a compelling reason to differ."); *see also Brown v. Bi–Lo, Inc.,* 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003) ("We recognize the Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation.").

Based on the foregoing, we find the ALC properly considered the appropriate factors, both from section 44–7–230(A) and from section 802 of Regulation 61–15, when it concluded Coastal's changes to its MRI project were not substantial.

## II. Burden of Proof

■ Next, Belfair contends the ALC placed an impermissible burden of proof upon Belfair when it held Belfair had to prove by a preponderance of the evidence that Coastal's changes were substantial enough to warrant voiding the CON. We find this issue is not preserved for our review.

After the ALC issued its final order, Belfair filed a motion for reconsideration, but it never specifically objected that the ALC placed an impermissible burden of proof upon Belfair. Belfair's failure to do so precludes review of this issue on appeal. *See Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to and ruled on by the ALJ are not preserved for appellate consideration."). Belfair argues in its reply brief that it was "legally unnecessary" to make this assertion in its motion for reconsideration because it "directly challenged the ALC's test for determining whether [Belfair] had shown that [Coastal's] Amended Project constituted a 'substantial change' under South Carolina law." However, we find Belfair's challenge to the ALC's consideration of the project review criteria

is not sufficiently specific to preserve its burden of proof argument for our review. *See Hill v. S.C. Dep't of Health & Envtl. Control,* 389 S.C. 1, 19, 698 S.E.2d 612, 622 (2010) (finding it is incumbent upon appellant to show it had clearly raised the issue to the ALC and asked for a specific ruling in that regard to preserve the issue for appellate review); *see also Anonymous v. State Bd. of Med. Exam'rs,* 329 S.C. 371, 375, 496 S.E.2d 17, 18–19 (1998) (finding issue of burden of proof must be raised to and ruled upon to be preserved for appellate review).

### III. Substantial Evidence

■ Belfair argues the ALC's decision was unsupported by substantial evidence, thereby requiring reversal pursuant to the APA. We disagree.

■ Substantial evidence "is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the [administrative] agency reached." *Leventis v. S.C. Dep't of Health & Envtl. Control,* 340 S.C. 118, 130, 530 S.E.2d 643, 650 (Ct.App.2000). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the ALC's finding from being supported by substantial evidence. *Id.* at 130–31, 530 S.E.2d at 650. Pursuant to the APA, this court may reverse the ALC if the appellant's substantial rights have been prejudiced because the administrative decision is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(5)(e) (Supp.2010).

Belfair claims it presented overwhelming evidence Coastal's amended project was substantially different in equipment, location, layout, scale, scope, and services from its original project. While Belfair introduced evidence and testimony to indicate changes were made to the MRI project, as the fact finder, the ALC could weigh the evidence and assess each witness's testimony and credibility prior to ruling on whether these changes were substantial enough to constitute a new project under section 605. *See Spartanburg Reg'l Med. Ctr. v. Oncology & Hematology Assocs. of S.C.,* 387 S.C. 79, 89, 690 S.E.2d 783, 788 (2010) ("The ALC presides over the hearing of

a contested case from DHEC's decision on a CON application and serves as the finder of fact.").

Several witnesses, including Dr. Borelli, the owner of Belfair, testified the original and implemented MRI units have virtually identical equipment with substantially similar scan times and image quality. Dr. Moesch, a radiologist, and Ms. Platt, an expert in health care planning and health care finance, both testified the change in location of the MRI project in relation to the hospital (adjacent to instead of inside the hospital) as well as the minor differences in the "Code Blue" system, the MRI lift and lift opening, and the overall layout of the implemented MRI project did not substantially change the project from a clinical, operational, or patient safety perspective. Further, Coastal presented evidence that the scope of the services is the same under both the original and amended project. Although Coastal cannot scan "unstable patients" who are in need of constant monitoring, Belfair highlights only one instance in Coastal's fifty-page application where it references "unstable patients," and as reflected in its initial application, the vast majority of the patients it seeks to serve are "acutely ill patients" who are not on constant monitoring equipment. Last, while Coastal's project costs decreased significantly under the amended MRI project, this modification was permissible. Although utilizing the fixed MRI unit instead of an in-house MRI unit decreased the operating and capital costs estimated in Coastal's CON application, this change was not substantial in terms of the project's compliance with the CON because it did not negatively affect the project's compliance with the cost containment or financial feasibility factors set forth in the project review criteria. Based on the foregoing, we find substantial evidence in the record exists to support the ALC's conclusion.

## IV. Transfer of Ownership

Last, Belfair claims Coastal's changes to its MRI project were substantial, thus resulting in a new project. Because the new project was incomplete on the date of the sale of Coastal to Tenet Health Systems, Belfair avers Coastal's CON was void as a result of the sale. Because we find Coastal's changes to the MRI project were not substantial, we decline to address this argument. *See Futch v. McAllister Towing of*

*Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting appellate court need not address an issue when disposition of prior issue is dispositive).

## CONCLUSION

Based on the foregoing, the ALC's decision is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.