731 S.E.2d 330

**SOUTH CAROLINA DEPARTMENT OF REVENUE
and Raymond Alford, Respondents,**

v.

**SANDALWOOD SOCIAL CLUB, d/b/a Spinners
Resort and Marina, Appellant.**

**No. 5014.**

Court of Appeals of South Carolina.

Heard June 20, 2012.

Decided Aug. 1, 2012.

John C. Bradley, Jr. and S. Jahue Moore, Sr., both of Moore Taylor & Thomas, PA, of West Columbia, for Appellant.

Benjamin J. Tripp, Milton G. Kimpson, Sean G. Ryan, all of Columbia, for Respondent South Carolina Department of Revenue. James J. Corbett, of Holler Dennis Corbett, Ormond Plante & Garner, of Columbia, for Respondent Raymond Alford.

LOCKEMY, J.

In this administrative action, Sandalwood Social Club d/b/a Spinners Resort and Marina (Spinners) appeals the Administrative Law Court's (ALC) decision to suspend its on-premises beer and wine permit and private club liquor by the drink license for sixty days. Further, Spinners contends the penalties imposed by the ALC violated its due process rights. We reverse and remand.

**FACTS**

Spinners is a private, lakefront resort located on Lake Murray in Saluda County, South Carolina. It consists of two restaurants, a fine dining restaurant that is open year round to the public, and an outdoor restaurant that is open from mid-April until the end of summer. From mid-April through Labor Day, Spinners offers live music from its outdoor music stage on Friday and Saturday nights until 10:30 p.m. On Sunday afternoons, it offers live acoustic music.

In a prior matter before the ALC, Raymond Alford was one of several interveners protesting the renewal of Spinners' on-premises beer and wine permit.[1] The Department of Revenue (DOR) found while Spinners met the statutory requirements for renewal of that permit, protests from the interveners were sufficient to deny it. Spinners filed a contested case with the ALC, but the parties resolved the matter by entering into a consent order of dismissal that contained twelve stipulations. Stipulation number four provided:

Not later than January 1, 2010 Petitioner will install and maintain a decibel monitoring device on the corner post of

---

1. Alford lives across the cove from Spinners, and his dock is approximately 150 feet from Spinners' outdoor music stage.

the bandstand nearest to Mr. Alford's home. Said device will have a red light as part of it that is clearly visible from across the cove. Petitioner shall control the noise level of all music at all times on the licensed premises so that the sound level at said decibel monitoring device does not exceed 100 decibels from the Petitioner's band stand. The said decibel monitoring device shall be posted at or around thirty (30) feet from the band stand. The device shall be constructed so as to cause the red light to light up at all times if and when the decibel level exceeds 100 decibels. Further, the Petitioner shall control the noise level of all music at all times on the licensed premises so that sound level does not exceed 75–80 decibels from Mr. Alford's dock.

Spinners' license was then renewed by DOR with the inclusion of the agreed-upon stipulations.

In January of 2010, James R. Causey, a field investigator in licensing and enforcement with the South Carolina Alcohol Beverage Control Commission received a phone call from a "member of the community" inquiring about the stipulations placed on Spinners' license. As a result of that phone call, Causey contacted DOR and obtained a copy of the order containing the twelve stipulations. He then visited Spinners' property on February 24, 2010, and March 30, 2010, finding the business closed on both occasions with no one present on the property.

Causey returned to Spinners on April 2, 2010, and while it still had not opened for the summer season, one of the owners, Theresa LeJohn, was present. Causey inspected the premises with LeJohn and noted compliance with a number of the stipulations contained in the consent order of dismissal.

Causey asked LeJohn about stipulation number four regarding the installation of the decibel or light meter. LeJohn informed Causey the decibel meter had been purchased, but she had not hung the decibel meter on the designated pole yet because Spinners had not opened for business. She explained she would have the meter up "two or three days from now" before Spinners opened for business. She further showed Causey the pole where the meter was to be placed and told him that her electrician had already installed wiring to the pole. Causey told LeJohn the stipulations of the consent

order were "self explanatory," and since the meter was "supposed to be up January 1," he had "no choice but to issue an administrative citation for violation of the stipulation" pursuant to regulation 7–200.1(I) of the South Carolina Code of Regulations (2011).

After his April 2 visit, Causey prepared an administrative report citing Spinners for one violation. Specifically, he cited a violation of the portion of stipulation number four that stated, "No later than January the 1st, 2010, Petitioner shall install and maintain a decibel monitoring device on the corner pole of the bandstand nearest Mr. Alford's home." The report provided that the first-time violation required a $500 penalty. Causey did not return to Spinners after his April 2 visit. DOR issued a determination on August 30, 2010, stating

[Spinners] noted that it previously purchased an expensive red light decibel monitoring device, but only mounted the device when live music is being played. [Spinners] stated its reasoning for sparingly mounting the device is because the device is not all-weather and is not under warrantee [sic]. However, [Spinners] stated that the device is hung in complete compliance with the stipulations during live band performances. Unfortunately for [Spinners], the section four of the stipulations does not make an exception for [its] actions. Thus, [Spinners] has knowingly violated the stipulations.

Thereafter, DOR found that on April 2, 2010, Spinners violated stipulation four of its license under regulation 7–200.1(I) of the South Carolina Code of Regulations (2011), which states

Stipulations. Any written stipulation and/or agreement which is voluntarily entered into by an applicant for a permit or license between the applicant and the Department, if accepted by the Department, will be incorporated into the basic requirements for the enjoyment and privilege of obtaining and retaining the permit or license and shall have the same effect as any and all laws and any and all other regulations pertaining to the permit or license. Knowing violation of the terms of the stipulation or agreement shall constitute sufficient grounds to revoke said license.

DOR imposed a $500 penalty for what it termed a "first offense sale for a violation against a Licensee's beer and wine permit." Further, it found "[Spinners] [had] not provided sufficient mitigating circumstances to lessen this violation." DOR did not find any further violations against Spinners.

Spinners timely filed a request with the ALC for a contested case on the ground that stipulation four was ambiguous and unenforceable and needed revision to be clear and non-contradictory to all parties. The matter was set for a hearing on November 22, 2010. Prior to the hearing, Alford and several other individual property owners across the cove from Spinners moved to intervene in the action claiming "repeated, consistent and blatant violation[s] of the Consent Order allowing a permit for the premises ... have adversely and substantially [a]ffected each intervener and other neighbors to the premises." On November 22, 2010, the ALC allowed Alford to intervene *"for the limited purpose of presenting evidence and argument related to the violation and fine assessed by DOR concerning the placement and maintenance of a decibel device."* (emphasis added). The ALC elaborated on the restrictions to Alford's testimony, noting the additional violations, fines, and injunctive relief he sought to be addressed were "outside the scope of this contested case." The ALC explained "[w]ith respect to the allegations of additional violations, the statutory scheme for enforcement of alcohol laws does not include a provision allowing a private right to prosecute violations before the ALC" and "any action to declare a violation and seek a penalty or license revocation must be initiated by [DOR]." The hearing was then continued until January 27, 2011.

Spinners did not appear on January 27, 2011, and the hearing was held in its absence.[2] DOR informed the ALC it was seeking a $500 fine for this first violation against the license within the three previous years. Alford asked to testify regarding an alleged seventeen separate incidents with Spinners, the purpose being to show "the intent and lack of intent of installing the noise meter." When discussing the implications of allowing that testimony, the ALC stated its

---

2. The administrative law judge (ALJ) who conducted the hearing on the merits was not the same ALJ who granted Alford's motion to intervene.

"understanding of the law [was] that only [DOR] has the right to bring a violation. However, [it] believe[d] there may be some flexibility in . . . the penalty for that first violation." In allowing the testimony, the ALC further stated that "while this is a first violation and [would] be considered only [as] a first violation," it had discretion as to what penalty to impose based upon the testimony in the record. Alford presented evidence pertaining to Spinners' conduct around the time of the alleged violation. He further testified that he made approximately seventeen complaints to Spinners and local police about noise levels between April and the end of July 2010. Alford also maintained the first time he saw the decibel meter at Spinners was mid-August of 2010. He presented photographs depicting his own decibel meter on his dock recording noise levels over eighty decibels on eleven different days between the end of May and mid-July of 2010 and police reports based upon his complaints about the noise level.

On January 31, 2011, Spinners filed a motion to re-open the record on the basis that it overlooked the hearing date within the ALC's order granting an intervention and continuance. Spinners stated, "Respondent wishes to be heard on the issue of the appropriate penalty to be imposed for the alleged violations . . . The respondent admits the allegations made by the petitioner but does believe they can offer evidence in mitigation." The ALC granted the motion and a second hearing was held on February 17, 2011. All parties appeared at this hearing.

LeJohn stated Spinners would like to address the mitigation of the fine, as well as the interpretation of the particular stipulation Spinners allegedly violated. She then admitted to violating the stipulation regarding installing and maintaining a decibel meter, "by virtue of the word, install." LeJohn explained that the decibel meter was not installed yet at the time of Causey's visit because it was an expensive piece of equipment, she did not want it exposed to the elements for no reason while Spinners was not open. At the time of the violation, she testified they had a week before they were supposed to open, and no bands were scheduled to be played until that time either.

On cross-examination, LeJohn stated the stipulations were a result of protracted negotiations, and that she entered into the agreement freely and voluntarily. While she mentioned during negotiations that January 1 was an illogical date for the decibel meter installation, she ultimately agreed to it and signed the document. However, she also testified that while the agreement says January 1, Spinners would be in compliance with the stipulations if they were completed by the day it opened. Alford introduced the ALC's order denying reconsideration from the previous contested case regarding Spinners' license renewal into evidence. The motion for reconsideration requested relief regarding the agreement's stipulations. The order stated "the parties in this matter entered into [the] [c]onsent [o]rder freely and willingly. The [c]onsent [o]rder was negotiated among all parties and was drafted by the parties before it was submitted to the [c]ourt."

Alford offered scenarios to LeJohn of how the decibel meter could be protected from the elements, and when asked if those would be possible, LeJohn stated, "I could do a number of things, I'm sure." Alford continued with a line of questioning pertaining to the decibel level at his dock being over 80 decibels. Spinners objected on the basis that it was not relevant because there was no cited violation of the stipulation requiring the sound to be kept at a certain level on Alford's property. Alford responded that the questioning was in "mitigation she's testified . . . she's fully complied with the consent order," and the ALC overruled the objection.

On March 29, 2011, the ALC issued its order finding Spinners violated Regulation 7–200.1(I) and suspended Spinners' on-premises beer and wine permit and private club liquor by the drink license for sixty days beginning April 15, 2011. In the ALC's findings of fact, it states,

> [Alford] has a device installed on his dock to allow [Spinners] to monitor the sound level to assure compliance with [stipulation] 4, which states, '[Spinners] shall control the noise level of all music at all time[s] on the licensed premises so that sound level does not exceed 75–80 decibels from . . . Alford's dock.' Between April and September, 2010, Alford made telephone calls to [Spinners] and the Saluda County Sheriff's Department (Sheriff's Department) complaining about loud music on 17 occasions. Additional com-

plaints were made by other neighbors on other occasions. LeJohn admits that neither she nor anyone from [Spinners] has ever checked the decibel monitor on Alford's dock and that the club has never attempted to determine if it has been in compliance with the stipulated condition requiring [Spinners] to control the noise level of music at all times so that the sound does not exceed 80 decibels on ... Alford's dock. [Alford's] Exhibits 1–5 and 7–8 contain photographs depicting the monitor on Alford's dock on eleven different dates between May 21, 2010 and July 17, 2010 showing the reading on the device between 82 to 88 decibels. I find, therefore, that [Spinners] has made no attempt to comply with the stipulated condition requiring it to control the noise level of music so that the sound does not exceed 75–80 decibels at ... Alford's dock. [Spinners] violated the condition limiting the noise level as measured from Alford's dock on at least eleven separate dates in 2010.

Additionally, the ALC stated,

Stipulation ... 2 of the Renewal Order requires [Spinners] to cease playing all music no later than 10:30 p.m. The Sheriff's Department Incident reports include documentation of complaint calls made by [Alford] at 10:44 p.m. on June 26, 2010, and 10:34 p.m. on July 16, 2010. I find that [Spinners] has violated [stipulation 2] of the Renewal Order on those two occasions.

The ALC recognized DOR's recommended penalty for the violation, then stated,

Furthermore, because I find that this violation was accompanied by other conduct which constitutes ongoing knowing violations of other conditions contained in the permit and license, I conclude that the appropriate penalty in this case is a sixty-day suspension of the beer and wine permit and liquor by the drink license.

Spinners timely moved for a reconsideration and supersedeas on April 5, 2011. The ALC denied those motions in orders dated April 11, 2011, and April 12, 2011. This appeal followed. Spinners also moved for supersedeas on April 15, 2011, asking this court to stay the ALC's order suspending its license. That same day, this court temporarily granted its motion. On

April 28, 2011, this court ordered an indefinite stay of the ALC's order of suspension.

## ISSUES ON APPEAL

1. Did the ALC err by suspending Spinners' on-premises beer and wine permit and private club liquor by the drink license pursuant to section 7–200.1(I) of the South Carolina Code of Regulations (2011)?
2. Did the ALC err by imposing penalties that violated Sandalwood's due process rights?

## STANDARD OF REVIEW

"Appeals from the ALC are governed by the Administrative Procedures Act (APA)." *MRI at Belfair, LLC v. S.C. Dep't of Health & Envtl. Control*, 394 S.C. 567, 572, 716 S.E.2d 111, 113 (Ct.App.2011); *see* S.C.Code Ann. §§ 1–23–310 to –400 (2005 & Supp.2011). "Pursuant to the APA, this court may reverse or modify the ALC if the appellant's substantial rights have been prejudiced because the administrative decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by an error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *MRI at Belfair*, 394 S.C. at 572, 716 S.E.2d at 113 (citing S.C.Code Ann. § 1–23–380(5) (Supp.2010)). " 'As to factual issues, judicial review of administrative agency orders is limited to a determination [of] whether the order is supported by substantial evidence.' " *Id.* (quoting *MRI at Belfair, LLC v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 1, 6, 664 S.E.2d 471, 474 (2008)).

## LAW/ANALYSIS

### Substantial Evidence to Support a Finding of a Willful Violation

Spinners argues the ALC's finding that it knowingly and willfully violated Regulation 7–200.1(I) by failing to have a working monitoring device installed by January 1, 2010 is clearly erroneous in light of the reliable, probative, and substantial evidence in the whole record. We disagree.

LeJohn testified she entered the stipulations freely and voluntarily. However, she stated that while stipulation four called for the installation of the decibel meter by no later than January 1, in her mind, if it was installed by the opening of the summer band season, Spinners would have been in compliance. We do not agree with LeJohn's interpretation of the stipulation. She testified that these stipulations were the result of a long negotiation, and that she ultimately signed the agreement, which states installation of the decibel meter must be completed by January 1. Interpreting the terms of the stipulation as written, LeJohn admitted to violating the stipulation regarding the installation and maintenance of a decibel meter. Thus, we find there is substantial, reliable, and probative evidence on the record for the ALC to find Spinners violated stipulation four. For the forgoing reasons, we affirm the ALC on this issue.

**Error in Penalizing Spinners for Other Violations**

Spinners maintains the ALC abused its discretion and committed an error of law by penalizing Spinners for violations not cited by DOR. We agree.

██ "An administrative agency has only the powers conferred on it by law and must act within the authority created for that purpose." *SGM–Moonglo, Inc. v. S.C. Dep't of Revenue*, 378 S.C. 293, 295, 662 S.E.2d 487, 488 (Ct.App.2008) (citing *Bazzle v. Huff*, 319 S.C. 443, 445, 462 S.E.2d 273, 274 (1995)). DOR is charged with the responsibility of administering and enforcing the laws and regulations governing the manufacture and sale of alcoholic beverages, including beer, wine, and alcoholic liquors. S.C.Code Ann. § 61–2–20 (2009) ("The functions, duties, and powers set forth in this title are vested in the department and the division. The department must administer the provisions of this title, and the division must enforce the provisions of this title."). "Contested case hearings arising under the provisions of [Title 61, Alcohol and Alcoholic Beverages] must be heard by the [ALC] pursuant to the South Carolina Revenue Procedures Act and the [APA]." S.C.Code Ann. § 61–2–260 (2009).

██ DOR has the authority to determine an appropriate administrative penalty, within the statutory limits established by the legislature, after the parties have had an opportunity

for a hearing on the issues. *See Walker v. S.C. Alcoholic Beverage Control Comm'n,* 305 S.C. 209, 210–11, 407 S.E.2d 633, 634–35 (1991). Further, in assessing a penalty, DOR "should give effect to the major purpose of a civil penalty," which is "deterrence." *Midlands Util., Inc. v. S.C. Dep't of Health & Envtl. Control,* 313 S.C. 210, 212, 437 S.E.2d 120, 121 (Ct.App.1993).

DOR can issue monetary penalties pursuant to section 61–4–250 of the South Carolina Code (2009), which states

> For violations of this chapter, or of Chapter 21 or 33 of Title 12, and for a violation of any regulation pertaining to beer or wine, the department may, in its discretion, impose a monetary penalty upon the holder of a beer or wine license in lieu of suspension or revocation.
>
> In these cases, the amount of any penalty imposed must be determined within the limits prescribed in this section in each case by the department after a hearing as provided in the South Carolina Revenue Procedures Act and the [APA]. For these violations:
>
> (1) retail beer and wine licensees are subject to a penalty of not less than twenty-five dollars nor more than one thousand dollars; and
>
> (2) wholesale beer and wine licensees are subject to a penalty of not less than one hundred dollars nor more than one thousand five hundred dollars.
>
> . . . .

Revenue Procedure 04–4, the advisory opinion cited in DOR's final determination, states "[t]he Department recognizes that insuring compliance with the law, not punishment, is the reason for administrative penalties." S.C. Revenue Procedure 04–4 (2004). It must be noted that the revenue procedures do not establish a binding norm, and they "do not restrict [DOR's] authority to impose any sanction within the statutory authority granted by the General Assembly." *Id.* However, according to the relevant procedure, a $500 penalty is recommended for a first violation of the beer and wine permit. *Id.*

In reaching a decision in a contested violation matter, the ALC serves as the sole finder of fact in the *de novo* contested case proceeding. *See, e.g., Marlboro Park Hosp. v. S.C. Dep't of Health & Envtl. Control,* 358 S.C. 573, 579, 595 S.E.2d 851, 854 (Ct.App.2004). "As an administrative agency,

[the ALC] is the fact-finder and it is [the ALC's] prerogative ... to impose an appropriate penalty based on the facts presented." *Walker v. S.C. Alcoholic Beverage Control Comm'n*, 305 S.C. 209, 210, 407 S.E.2d 633, 634 (1991).

Here, DOR cited Spinners for the sole violation of failure to install and maintain a decibel meter on its property on April 2, 2010, in accordance with Spinners' beer and wine permit, which was a first offense violation. DOR sought a $500 dollar civil penalty pursuant to Revenue Procedure 04–4. As stated previously, only DOR may bring violations under its regulations, and no private right exists to bring a claim against a business under DOR's regulatory scheme. *See* S.C.Code Ann. § 61–2–20 (2009). Despite the ALC clearly granting Alford leave to intervene "for the limited purpose of presenting evidence and argument related to the violation and fine assessed by DOR concerning the placement and maintenance of a decibel device," [3] Alford was permitted to testify as to other alleged violations at trial. The ALC relied on much of the evidence presented by Alford to find violations supplemental to the violation cited by DOR. While the evidence of Spinners' conduct after the cited violation had some relevance to LeJohn's mitigation argument, i.e., she intended to install Spinners' meter by mid-April, the ALC should have considered the post-citation conduct for the sole purpose of determining the credibility of this mitigation argument.

---

3. We are placed in the rare position of addressing restrictions on an intervenor's testimony in an alcohol enforcement matter. The ALC Rules allow "any person" to intervene in "any pending contested case" upon a showing that (1) he will be aggrieved or adversely affected by the final order, (2) his interests are not being adequately represented by existing parties, and (3) the intervention will not unduly prolong the proceedings or otherwise prejudice the rights of existing parties. ALC Rule 20(B). While intervenors are common in initial licensing matters, a third party will typically not be able to establish the second prong of the test, as DOR will generally adequately represent private citizens' interests in license enforcement matters. However, here, Alford's status as an intervenor is not an issue on appeal. We discourage the practice of allowing an intervenor in a license enforcement matter, which grants them leave to call witnesses and cross-examine witnesses brought by DOR. Permitting that type of action easily opens the door to what has happened here, essentially a private citizen bringing a claim against a licensee under the DOR license enforcement regulatory scheme. As an alternative, we believe it would be appropriate for the third party to instead be called as a witness by DOR if necessary.

In its findings of fact, the ALC listed at least two other violations that were not cited by DOR. The ALC's sixty-day suspension of Spinners' beer and wine permit and liquor by the drink license was specifically based upon not only the one violation cited by DOR, but also the additional violations found by the ALC. We find the ALC's consideration of post-citation conduct for any purpose other than the credibility of Spinners' mitigation argument was an abuse of discretion, while the allowance of what amounted to a private citizen bringing a claim under DOR's regulatory scheme was an error of law. Because this error formed part of the basis for a more severe penalty, we reverse the ALC's decision. We remand this case to determine whether the $500 dollar penalty assessed by DOR was appropriate in relation to the one violation cited by DOR.[4]

## CONCLUSION

For the foregoing reasons, we reverse the ALC's decision and remand the matter in accordance with this decision.

**REVERSED AND REMANDED.**

THOMAS and GEATHERS, JJ., concur.

<hr/>

4. We acknowledge Spinners' due process argument; however, we do not think it is necessary to address it in light of our determination of the other issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).