*EX PARTE* KENMORE SHOE COMPANY, *IN RE* MERCHANTS' COFFEE CO. v. FOSTER & CO.

1. REMEDY.—Party seeking to establish an equitable lien over fund in Court may intervene by petition.
2. JUDGMENT IN REM—RES JUDICATA.—A judgment *in rem* binds all parties interested in the *res*.
3. DEBTOR AND CREDITOR—CORPORATION—FRAUD.—When a debtor fraudulently transfers his individual property to a corporation gotten up for the purpose of defrauding his creditors, they may pursue the property into the corporation, and have it sold and applied to the payment of their debts.
4. ATTORNEY'S FEE.—Fee allowed attorneys not disturbed.

Before WITHERSPOON, J., Greenville, December, 1896. Affirmed.

Petition by Kenmore Shoe Co., *In re* Merchants' Coffee Co. against J. A. Foster & Co. *et al.* The following is the Circuit decree:

The facts of the case, as gathered from the report of the referee and the evidence in the case, are as follows: The defendant, W. S. Good, was, during the fall of the year 1895, engaged in the business of a merchant, doing business in his own name at Marietta, county and State aforesaid, and also as a member of the firm of J. A. Foster & Co., a copartnership doing business in Greenville city, county and State aforesaid, which copartnership was composed of one J. A. Foster and the said W. S. Good. The said J. A. Foster & Co. began business August 8, 1895, and went out of business by reason of the foreclosure of a mortgage existing over their stock of goods on December 16th, 1895. The said W. S. Good, during the summer of 1895, executed a chattel mortgage over his Marietta stock of goods to his wife, Nannie J. Good, to secure an alleged indebtedness of $1,000, which mortgage was recorded on day of October, 1895, and on the 28th day of December, 1895, the said W. S. Good turned over to the said Nannie J. Good the said Marietta stock of goods under a bill of sale of that date. The alleged W. S. Good Co. received its certificate of charter on the 1st day of January, 1896. The purpose of the alleged corporation was that of trading, buying and selling goods and merchandise. The said alleged corporation was capitalized at $3,000, the capital stock consisting of thirty shares, at $100 per share. The said Nannie J. Good was the alleged principal stockholder in the said corporation, she having taken, as it was claimed, twenty-eight shares of stock, and the said W. S. Good is alleged to have taken one share therein, and one Sammons also one share therein. According to the report of the referee, and as to this no exception has been taken, neither the said W. S. Good nor the said Sammons paid any money for their said shares. The said Nannie J. Good claimed that the consideration for her twenty-eight shares of said stock was the Marietta

stock of goods, which she claims to have gotten from her husband, W. S. Good, and which she claims to have put into the stock of the alleged W. S. Good Co., and also $1,000 in cash, which she claims to have put in said company in payment of her said shares of stock. The said Nannie J. Good was the alleged president of said corporation, and the said W. S. Good was its alleged secretary and treasurer and business manager. The said Marietta stock of goods put into the alleged W. S. Good Co. was supplemented by other stock, and this stock was sold from time to time and replenished with other stock. W. S. Good having testified in this case that when he sold goods put into the W. S. Good Co. by Mrs. Nannie J. Good, the proceeds of such sale went into the business of said company, just as the proceeds from the sale of any other goods alleged to belong to the said W. S. Good Co. On the 12th day of February, 1896, while the said alleged corporation was engaged in business, the principal action herein was begun by plaintiffs therein on behalf of themselves and all other creditors of the said J. A. Foster & Co., and the said W. S. Good, in an action for goods sold and delivered to J. A. Foster & Co. between September 21st and November 4th, 1895, against J. A. Foster & Co., the said W. S. Good in his individual capacity, and the said W. S. Good Co. and Nannie J. Good.

In the said action, plaintiffs asked that the transfer of property from said W. S. Good to said Nannie J. Good, being the Marietta stock of goods, be declared fraudulent and void as against the creditors of W. S. Good and J. A. Foster & Co.; and also to have the property of the said W. S. Good Co. declared the property of the said W. S. Good, it being alleged by the plaintiffs that the transfer of said property to the said Nannie J. Good and the formation of the said corporation, were all done for the purpose and with the intention of hindering, delaying and defrauding the creditors of said W. S. Good and the said J. A. Foster & Co.; and that the property of said alleged corporation was, in fact and reality, the property of the said W. S. Good, cloaked and

covered by the name of said corporation, in order to defeat and defraud his creditors. It was also alleged in paragraph 14 of plaintiff's first cause of action, and paragraph 15 of the second cause of action, "that the said W. S. Good Co., as plaintiffs are informed and believe, is daily selling and disposing of the property alleged to belong to it, and since its alleged organization has contracted an indebtedness of something over $600," and this was denied by defendant in their answer. The said complaint also asked that the defendant, W. S. Good Co., be enjoined from selling, disposing of or in any way interfering with the said stock of goods, or the assets of said W. S. Good Co., until the further order of this Court. Also asked for the appointment of a receiver, and that all creditors of the said W. S. Good and J. A. Foster & Co. be called in and allowed to prove their claims in this action. An order for temporary injunction was also had and served with a copy of the pleadings. Said injunction was never dissolved, but the alleged W. S. Good Co. was allowed to resume business upon the execution of a bond, which it did, and on the　　day of February, 1896, the said alleged W. S. Good Co. resumed business and continued until the final order herein.

The issues in the said case were referred to the master for said county and State, to take the testimony and report the same to this Court. The case was heard by his Honor, Judge Jos. H. Earle, who, on the 8th day of April, 1896, pronounced the decree in said cause, in which he sustained the action of plaintiffs, holding that all of the allegations above noted were sustained by the evidence in the cause, and adjudged that the property transferred by the said W. S. Good to the said N. J. Good was transferred without valuable consideration, and with the intention to hinder, delay and defraud his creditors; that the said corporation was formed with a like intent; that the value of the stock of goods put in the alleged corporation by Nannie J. Good, known as the Marietta stock of goods, was $1,200; that the said Nannie J. Good did not put into the alleged W. S.

Good Co. the amount of money claimed by her; that if she put any money in the said W. S. Good Co., she would have the right to prove the amount and recover the same, as any other creditor of the said W. S. Good or J. A. Foster & Co. He further says: I find and decree the stock of goods and assets alleged to belong to the W. S. Good Co. to be the property of the defendant, W. S. Good, and subject to his debts." His Honor appointed a receiver of the assets of J. A. Foster & Co., W. S. Good, and the alleged W. S. Good Co., and authorized and required him to take immediate possession of said assets, convert the same into cash, and hold the same subject to the further order of the Court. He also directed and decreed that all of the creditors of the said W. S. Good and J. A. Foster & Co. be allowed to come forward and establish their claims before the master of this Court, who shall call upon them so to do by advertising the same; and that they be paid their respective claims out of the funds herein provided for as the law directs. He also referred it to the master to ascertain and report what would be a reasonable fee to be paid out of the said estate for the attorneys for the plaintiffs of record in said case. The receiver immediately took possession of the said property, sold the stock of goods, and collected certain accounts, all of which, as stated by the referee, amounted to between $1,100 and $1,200, and the same is now in his hands. A notice has been published, requiring the creditors of the said W. S. Good and J. A. Foster & Co. and the alleged W. S. Good Co. to establish their claims before D. P. Verner, master, and all of said parties have proven claims before said master as appears by his report herein, and the report of the referee to which there is no exception. On June 6th, 1896, the Kenmore Shoe Co. filed a petition in behalf of themselves and all other creditors of said W. S. Good Co., asking to intervene in said cause, alleging that they are creditors of the said W. S. Good Co., and that said corporation was duly created and organized according to law, and that it reported said organization to petitioners and other

creditors of the same, and that it had a capital stock of $3,000, and that upon the faith of this organization and report the petitioners and said other creditors sold said corporation goods, as stated in said petition.   The petitioners claim that the creditors of W. S. Good Co. are entitled to priority of payment in the distribution of the assets of the W. S. Good Co.   That is to say: The Kenmore Shoe Co. alleged that they sold a bill amounting to $106.95 on February 3d, 1896.   Wm. T. Beidler & Co. sold their goods, as they alleged, between February the 4th and February the 28th, 1896; Dodson claims to have sold his goods on March 21st, 1896; Heintz claims to have sold his on January 30th, and Harris on the 2d day of January, 1896.

In his report of claims, the master says: "The following were proven against the W. S. Good Co."   Then follows the names of the parties, and the amount, aggregating $1,368.39. The master also says, in his report on claims, to which there are no exceptions. "After the above claims were proven (among which were the claims of petitioners and those in like plight and condition, as they allege), a contest arose as to the disposition of the funds in the hands of the receiver applicable to these claims.   In this contest, the right of R. C. Foster, one of the claimants, is involved, and being related by blood to the master, it was agreed amongst the parties that all matters involved in this contest should be tried before B. M. Shuman, special referee."   And by order of this Court, said B. M. Shuman, Esq., was substituted.   The said referee held a reference, and took the testimony in this proceeding, and submitted his report, to which reference is hereby craved, in which he reports adversely to the priority of the claims of petitioners, recommending that their petitions be dismissed; and recommending, further, that the said petitioners share ratably with the other creditors of the said W. S. Good.   I concur with the special referee in his conclusion that the petitioners had the right to intervene in this action.

Petitioners except, upon various grounds, reference to

10—50

which is hereby craved, and which brings into view the conclusion arrived at by the referee, and which raises practically the question, whether or not petitioners are entitled to any priority over the general creditors of W. S. Good by reason of their being, as they allege, creditors of the W. S. Good Co., a corporation, so they contend, and, therefore, having an equitable lien upon the assets of said corporation, which, as they contend, gives them a priority as to said assets over the general creditors of W. S. Good and J. A. Foster & Co. in the distribution of the moneys in the hands of the receiver derived from said assets.

Where a corporation has been formed regularly and without fraud or fraudulent purpose, and where it has acquired its property *bona fide* and for value, as against the said corporation, the position of the petitioners is correct. *Mumma* v. *Potomac County*, 8 Pet., 281; *Sangler* v. *Upton, assignee*, 91 U. S., 601. I do not think, however, that the doctrine contended for by the petitioners has any application to this case. There can be no doubt of the fact that if petitioners had been formal parties to the record in the Merchants' Coffee Co. case, they would be bound by the decision therein; not having been formal parties, however, what effect has Judge Earle's decree upon their rights, and to what extent are they bound thereby? This question meets us at the very threshold of the consideration of this case. "Where the Court has jurisdiction of the *res*, its decree *in rem* upon the character or status of the subject matter is binding, not only on the parties and their privies, but also upon all persons who might have asserted an interest therein." 5 A. & E. Enc. of Law, p. 385; 1 Greenleaf on Ev., 525; Freeman on Judgments, sec. 606. Says Judge Freeman, in the section quoted: "Perhaps the most correct, as well as the most concise, definition anywhere given of a judgment *in rem* is that to be found in Smith's Leading Cases, namely: That it is an adjudication upon the status of some particular subject matter by a tribunal having competent authority for that purpose, depending for its effect on this principle,

that it is a 'solemn declaration, proceeding from an accredited quarter, concerning the status of the thing adjudicated upon, which very declaration operates accordingly upon the status of the thing adjudicated upon, and, *ipso facto*, renders it such as it is thereby declared to be.'" Says 12 A. & E. Enc. of Law, page 149: "A distinction may be noticed between those judgments which incidentally establish reputation, custom, a public ferry, and matters of the like character, and judgments strictly *in rem*. The latter bind third persons; they are conclusive evidence against all the world." (Citing cases.) So, then, this judgment of Judge Earle's being undoubtedly a judgment *in rem*, as admitted by the counsel for petitioners, bound not only the parties to the record, but the whole world, as to matters there adjudicated, in so far as plaintiffs and those in like plight and condition with them were concerned. *State ex rel. Brown* v. *Others and L. R. R. Co.*, 13 S. C., 300; *Huntington* v. *Sanders*, 120 U. S., 78; *Phillips* v. *Sedgwick*, 95 U. S., 3; *Trust Co.* v. *Same*, 97 U. S., 304.

Counsel for petitioners, in their argument before me, conceded this, and admitted that they did not question in the least any fact or conclusion decreed by Judge Earle in the principal case. If this be true, then they are bound that the alleged corporation was a nullity, and that its assets were really the property of W. S. Good, and subject to his debts; also, they are bound by his decree in which he orders the appointment of a receiver for said assets, and the distribution thereof among the creditors of W. S. Good, which includes, of course, in the light of Judge Earle's decree, the creditors of J. A. Foster & Co. and the W. S. Good Co. Petitioners cannot hope to succeed in their contentions without seeking to reverse the judgment of Judge Earle in these particulars, and this, under the well established authorities, I cannot do. But, conceding that the said corporation was valid as to the petitioners, I am satisfied that the conclusion of referee, from this view of the case, is correct. He says: "That part of the decree of his Honor,

Judge Earle, holding the fraudulent character of the transfer of said property, and the fraudulent purpose in the creation of said corporation, and holding that said corporation was really said W. S. Good, has not been questioned by petitioners, they are bound thereby." As against the plaintiffs and the creditors represented by them, said corporation was a nullity, and the said transfer of property was void. As to them the title of the property never changed, and the business of said corporation was the business of said W. S. Good, and the property held by the corporation was his property. Conceding that the petitioners, as against said corporation, have the right, if they so elect, to insist that said corporation and property were as they appear to be—that it was a genuine corporation, and said property was owned by it—they have not this right as against the plaintiffs and creditors represented by them. *Booth* v. *Bunce*, 33 N. Y., 139; Cook on Corporation Law, vol. 2, 663. It is familiar law that where property has been transferred with intention to defraud creditors, that the creditors may pursue it, into whosoever hands it may be found, except in the hands of a *bona fide* purchaser for value without notice. Bump on Fraud Con., pp. 229, 230, 231. And where a secret trust exists in favor of a debtor, his creditors have a right to have the trust declared a resulting trust, and to have the property sold and applied to their debts. *Brown* v. *McDonald*, 1 Hill Ch., 297; A. & E. Enc. Law, vol. 10, p. 23; Pom. Eq. Jur., vol. 3, sec. 1057. The creditors in all such cases have an equity to pursue the property and have the holders of the legal title declared trustees for their benefit. In such cases their rights cannot be impaired or defeated, except by *bona fide* purchasers for value without notice. Pom. Eq. Jur., vol. 2, sec. 841; Bump on Fraud. Con., pp. 229, 230, 231.

As I understand, the petitioners do not claim to be *bona fide* purchasers for value without notice. So, then, in this case, inasmuch as Judge Earle has found, and petitioners do not and cannot question such finding, that at the very

beginning of the career of said alleged corporation, its stock was the property of the said W. S. Good, the creditors of the said W. S. Good had the right at that time to have said property applied to the payment of their debts. Their equities, therefore, existed not from the time the receiver was appointed, but from the very beginning of the existence of the said alleged W. S. Good Co. as a corporation. So, then, the general creditors of W. S. Good had the right to follow and pursue the said property into whosoever hands it might be, except in the hands of a *bona fide* purchaser for value and without notice, as held by the above authorities. There is no evidence that the petitioners dealt with the alleged corporation upon the inducements held out by its charter, under which it claims to have operated. None of said petitioners were examined. . They did not pretend to tell how, or under what circumstances, they sold their goods, nor whether or not they knew of the alleged fraud. The Court cannot assume this. Conceding that petitioners have an equitable lien on the property of said corporation, their equity is not superior to the prior equities of the creditors of said W. S. Good; and, as stated by the referee, where the equities are equal, those that are first in point of time must prevail. Pom. Eq. Jur., 735, 741, and 756. The petitioning creditors claim that they are at least entitled to priority as to the property acquired by the W. S. Good Co. from other sources than the Marietta stock of goods, contributed by W. S. Good to the W. S. Good corporation. The Marietta stock contributed by W. S. Good to the capital stock of the W. S. Good Co. was mixed with other goods, and the proceeds of the sale of said stock was used by said corporation to buy other goods. Under these circumstances, it is impracticable, with any degree of certainty, to eliminate the Marietta stock of goods from the other goods found by the receiver in the possession of W. S. Good Co. It would be the result of mere speculation to attempt such a division of the stock of goods, as shown by the testimony of the receiver.

The tenth exception of the petitioning creditors to the report alleges that the fee of $300 recommended by the referee to be paid plaintiff's attorneys out of the fund in Court is excessive. I agree with the referee that plaintiff's attorneys are entitled to a reasonable fee, but the amount of such fee, without reference to the valuable services rendered by said attorneys, should be estimated with reference to the amount of the fund brought into Court for the benefit of creditors. The amount of the fund brought into Court is between $1,100 and $1,200; the claims established before the master amount to $3,195.38. In this view of the matter, and as the fund for distribution will be decreased by costs and the fees of the receiver, I conclude that a fee of $200 would be as much as the Court should direct to be paid out of said fund. To this extent it is hereby ordered and adjudged, that the referee's report be modified. Having held that the petitioners were entitled to intervene in the above entitled action, the referee recommends that the petition be dismissed as to petitioner's claim of priority in the distribution of the fund in Court. I concur in the referee's conclusion that the petitioners' claims are not entitled to priority—it is based upon sound principles of equity.

It is ordered and adjudged, that each of the exceptions of the plaintiffs and of the petitioning creditors to the referee's report, except as to the fee to be allowed plaintiff's attorneys, be overruled. It is further ordered and adjudged, that the referee's report herein, except as to the amount of said fee, be confirmed and made the judgment of this Court. It is further ordered, that after paying such costs as are allowed by law, including the receiver's fees, the receiver, John H. Earle, do pay out and distribute the fund in his hands ratably among the creditors who have established their claims, as recommended by the special referee.

The petitioners, in behalf of themselves and all other creditors of the W. S. Good Co., appeal upon the following grounds:

1. Because his Honor erred in holding that the creditors of W. S. Good had the right to regard the property in the receiver's hands as the property of W. S. Good individually; whereas he should have found that the said property belonged to W. S. Good Co., a corporation, and was first applicable to the payment of the debts of the said corporation. 2. He erred in not holding that at the time the stock of goods was transferred by Nannie J. Good to the said corporation, there was no lien upon it in favor of the plaintiff or in favor of any creditor of W. S. Good, and that the petitioners herein, and all other persons who gave credit to the said corporation in good faith, are entitled to have it considered as the property of the company, and he erred in holding otherwise. 3. Because he erred in not holding that when the receiver in this case, appointed as he was for the creditors of W. S. Good, took possession of the property of the said corporation, he took it subject to all equities existing in favor of the *bona fide* creditors of the said corporation, and they are to be first paid out of such funds. 4. He erred in holding that in order to give the petitioners priority, they must show that they had acquired the legal title without notice, in addition to their equities; and in holding further, that only purchasers for value can claim protection; whereas it is submitted that the creditors of the said corporation are entitled to this protection in their character as *bona fide* creditors. 5. He erred in holding that the equities of the creditors of the said corporation are not superior to those of W. S. Good, and that they are not entitled to any priority, and must share ratably in the distribution of the funds. 6. He erred in not holding that the receiver had separated the goods in his hands and had sold same in parcels, and that the funds in his hands were derived as follows: (1) $825, from new goods purchased by the W. S. Good Co., subsequently to its organization; (2) $160, from goods put into said corporation by Mrs. Good; (3) $9, being the proceeds from goods as to which there was some doubt; and in not holding that the proceeds from the

goods mentioned first above, to wit: $825, were applicable exclusively to the creditors of the W. S. Good Co. 7. He erred in not holding that all moneys and accounts collected by the receiver on account of the W. S. Good Co. were first applicable to the payments of the debts of the said corporation. 8. Because he erred in holding that the attorneys for the petitioners conceded that the decree of Judge Earle was a judgment *in rem*, and that they were bound by every fact or conclusion found or decreed by his Honor, Judge Earle; whereas it is submitted that the attorneys for the petitioners did not, either by exception or argument, concede such facts; it being further submitted that even though the decree of Judge Earle was binding and conclusive as to the fact of the fraudulent organization of the said company, that as against the petitioners and other creditors in like plight, possessing an inequitable lien upon the assets of the corporation, the decree of Judge Earle is not conclusive as to their right of priority in the payment over creditors of W. S. Good. 9. Because his Honor erred in holding that the petitioners cannot hope to succeed in their contention without reversing the judgment of Judge Earle as to the fraudulent transfer by W. S. Good to his wife, and fraudulent organization of the said company, it being submitted that, even though this fraud exists, the petitioners and other creditors of W. S. Good Co. who gave credit without notice of such frauds are not concluded by the decree of Judge Earle, and that, having equitable liens upon the assets of the said corporation, they may assert them notwithstanding the said decree. 10. Because his Honor erred in holding that there was no evidence that the petitioners and other creditors of W. S. Good Co. were creditors of the said company without notice of the fraudulent organization thereof, and that the Court could not assume that they were such creditors without notice; it being submitted that it appeared that such creditors did make advances to the said corporation and sold goods to it after its organization, and there is a presumption of law that these sales were made on the

strength of the said organization, and assets apparently belonging to such corporation. 11. Because his Honor erred in holding that there was no evidence that the petitioners were creditors without notice of such fraud, it being submitted that no such question was before him, inasmuch as no such question was made before the referee and ruled upon by him, and inasmuch as no notice was given by the plaintiff to confirm the referee's report, on this ground, no notice of this position was given.

. If these exceptions be overruled, then we submit: 12. He erred in not holding that the highest rights which the creditors of W. S. Good could claim are to be considered as creditors of W. S. Good Co. to the extent of the value of the goods originally belonging to W. S. Good contributed by Nannie J. Good to the stock of the corporation. 13. That he erred in holding that the fee for the plaintiff's attorneys should be paid *pro rata* out of the funds coming to the creditors of the said corporation; it being submitted that the plaintiffs were not the representatives of the class of creditors to which the petitioners belonged, but that their interests were antagonistic, and the fee should have been assessed only as against those creditors represented by the plaintiff.

Plaintiffs served on petitioner's attorneys the following notice:

(1) Plaintiffs *in re* Merchants' Coffee Co. *v.* J. A. Foster & Co., designated as the respondent and represented by J. A. McCullough and J. C. Jeffries, also except to the decree of his Honor, Judge Witherspoon, wherein he modifies the report of the referee in allowing to the attorneys for the general creditors a fee of $300 for their services, to be paid out of the general fund, and will move the Supreme Court to reverse the same upon the ground that the overwhelming weight of the testimony sustained the referee in this particular, and the decree of the Circuit Judge in allowing a fee of only $200 was without evidence to sustain it. (2) He

erred in not holding that the petitioners being simple contract creditors of the alleged W. S. Good Co., had no right under the showing made by them to intervene in this action. He, therefore, erred in not dismissing their petitions upon this ground.

*Messrs. Haynsworth & Parker*, for petitioners, appellants, cite: *Capital stock of corporation, trust fund:* 6 Am. St. Rep., 539; 3 Mason, 308; 13 Wis., 57; 17 Wall., 620; 91 U. S., 256, 45; 3 Am. St. Rep., 825. *Creditor no lien before judgment:* 48 N. J., 508; 24 How., 352; 41 S. C., 50; 44 S. C., 65; 3 Strob. Eq., 55; 23 S. C., 416; 37 S. C., 214. *Creditor can only recover property fraudulently transferred:* 1 Hill Ch., 287. *Fees out of common funds:* 24 S. C., 238; 38 S. C., 557; 30 S. C., 483; 21 S. C., 179.

*Mr. J. A. McCullough*, for plaintiffs, contra, cites: *Judgment in rem conclusive against all:* 120 U. S., 78; 37 S. C., 220; 13 S. C., 309. *Fees out of common fund:* 45 S. C., 319. *Petitioners quasi parties:* 45 N. J., 77, 87. *There being no corporation, there are no corporation creditors:* 46 S. C., 411.

*Mr. J. C. Jeffries*, also for plaintiffs, contra, cites: *Petitioners have no right to be heard:* 68 Md., 118; 25 Tex. Supp., 45; 6 La., 685; 57 Cal., 70; 50 Ia., 429. *Judgment in rem binds all:* 13 S. C., 307; Bail. Eq., 280, 194. *Attorneys' fees:* Bail. Eq., 280; 38 Md., 345; 45 S. C., 319.

July 21, 1897.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The facts of the case are fully set out in the decree of the Circuit Court, which, with the exceptions thereto, appear in the official report.   The decree of the Circuit Court is satisfactory to this Court, and little can be added in support of its conclusions.

The right of the petitioners to intervene in the principal cause cannot be doubted, inasmuch as they seek to establish an equitable lien over the fund which is sought to be distributed in the principal cause.   The con-

troversy here is over a fund of about $1,200, realized from a sale of a stock of merchandise found in the possession of the W. S. Good Co., a corporation, chartered to carry on a mercantile business. The contest is between the creditors of the corporation, as one class, whose claims aggregate $1,376.39, and the creditors of J. A. Foster & Co., a partnership, of which W. S. Good was a member, another class, whose claims aggregate $2,217.99. W. S. Good was a stockholder in the W. S. Good Co., and its manager. The creditors of the partnership claimed the fund on the ground that the stock from which it was realized was the property of W. S. Good, and, therefore, applicable to the debts of the partnership of which he was a member, while the creditors of the corporation claim an equitable right to the fund as corporate property, capital stock, and liable for the payment of the debts of the corporation.

In the main cause, to which the corporation was a party, Judge Earle decreed that the stock of goods and assets alleged to belong to the W. S. Good Co. corporation, was the property of W. S. Good, and subject to his debts; this was a judgment *in rem*, binding on the corporation and its creditors, and no appeal has been taken therefrom. It is, therefore, final and conclusive as to the status of the property in dispute.

Therefore, as it seems to us, the question is not which class of creditors has the superior equity over the property of a corporation, the creditors of the corporation or the creditors of an individual, claiming a prior equity over the corporation's property. It being finally determined that the property in question is not the property of the corporation but the property of W. S. Good, the real question was whether the creditors of the corporation had any equity at all as to the property of W. S. Good, as against his individual creditors. The Circuit decree allows the creditors of the corporation to share with the creditors of W. S. Good in the distribution of the fund. The credit-

ors of the corporation have no right to complain, since the decree is more favorable to them than it might have been, and the creditors of W. S. Good have not questioned the decree in this regard.

Under the view we take of the case, we are not disposed to disturb the conclusion .of the Circuit Judge as to the fee which he adjudges to be paid to plaintiff's attorneys in the main cause.

The judgment of the Circuit Court is affirmed.