**SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent,**

v.

**MEENAXI, INC., d/b/a Corner Mart, Appellant.**

Appellate Case No. 2015–000292
Opinion No. Op. 5439

Court of Appeals of South Carolina.

Heard April 19, 2016
Filed September 7, 2016

640

642

644

S. Jahue Moore and John Calvin Bradley, Jr., both of Moore Taylor Law Firm, P.A., of West Columbia, for Appellant.

Milton Gary Kimpson, Lauren Acquaviva, and Sean Gordon Ryan, all of Columbia, for Respondent.

LOCKEMY, C.J.:

Meenaxi, Inc. d/b/a Corner Mart (Appellant) appeals the administrative law court's (ALC's) order affirming the South Carolina Department of Revenue's (the Department) revocation of an off premises beer and wine permit that allowed alcohol to be sold at the Corner Mart. On appeal, Appellant argues (1) the ALC erred in determining the Department brought and pursued this action against the proper parties; (2) the Department's failure to bring and pursue this case against the proper parties violated the due process rights of Malkesh Patel—the owner of Meenaxi, Inc. and the Corner Mart; (3) the ALC erred in revoking Appellant's permit pursuant to subsection 61–4–580(5) of the South Carolina Code (2009); (4) the ALC's factual findings and legal conclusions were based upon erroneously admitted testimony and evidence; and (5) the ALC abused its discretion and committed an error of law by determining that revocation of the permit was the appropriate penalty. We affirm.

## FACTS/PROCEDURAL HISTORY

Meenaxi, Inc. owns the Corner Mart, a convenience store located in Anderson that sold beer and wine pursuant to an off premises beer and wine permit issued by the Department on January 19, 2012. On February 26, 2013, Agent Thomas Bielawski—a special agent in the South Carolina Law Enforcement Division's (SLED's) Video Gambling Unit—conducted a regulatory inspection of the Corner Mart pursuant to section 61–4–230 of the South Carolina Code (2009) and discovered two video gaming machines—a Products Direct machine and a Gift Surplus machine—in the store. Agent Bielawski examined the machines and determined they were illegal video gaming machines, as defined by section 12–21–2710 of the South Carolina Code (2014). Accordingly, he seized the machines pursuant to his authority under section 12–21–2712 of the South Carolina Code (2014).[1] In addition, he issued a

---

1. Section 12–21–2712 provides,

> Any machine, board, or other device prohibited by [s]ection 12–21–2710 must be seized by any law enforcement officer and at once

citation to "Malkesh Patel Meenaxi, Inc." for violating section 12–21–2710 and subsection 61–4–580(5)[2] because he determined Appellant had knowingly kept illegal video gaming machines inside the Corner Mart.

Agent Bielawski then brought the machines before an Anderson County magistrate. The magistrate examined the machines, determined they were illegal video gaming machines, and issued an Order of Destruction on March 1, 2013.[3] The Order of Destruction stated, "The Defendant has 15 days from the receipt of this Order to request a Post Seizure Hearing to contest the illegality of the machine(s). Otherwise, the machine(s) will be destroyed." The owner of the machines, Encore Entertainment, requested a post-seizure hearing, which was scheduled for December 17, 2013. Encore Entertainment subsequently withdrew its request for a post-seizure hearing, and the magistrate issued a Final Order on December 18, 2013, finding the machines illegal and ordering their destruction.[4]

On March 28, 2013, the Department gave Appellant written notice of its intent to revoke the off premises beer and wine permit. On April 3, 2013, Appellant protested the revocation of the permit. On May 8, 2013, the Department issued a written determination that Appellant violated subsection 61–4–580(5)

---

taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if satisfied that it is in violation of [s]ection 12–21–2710 or any other law of this State, direct that it be immediately destroyed.

2.  Subsection 61–4–580(5) prohibited the holder of a permit authorizing the sale of beer or wine from knowingly allowing a crime to be committed on the licensed premises.

3.  The action before the magistrate was originally captioned "SLED v. Corner Mart." The parties subsequently stipulated that the original caption should be amended to list only the machines as the defendants in the civil forfeiture action and that the store and store owner were not proper parties to the action because the forfeiture action was in rem. Appellant noted at trial that it "brought [this] issue up" to the magistrate and the magistrate "ruled in his final order that we were dismissed because we weren't a proper party to it and should never have been a party to it."

4.  The magistrate's Final Order was captioned "SLED v. One (1) Products Direct Machine and One (1) Gift Surplus Machine."

by knowingly permitting illegal gaming machines to be kept on its premises. The Department determined revocation of the off premises beer and wine permit was the appropriate penalty for violating subsection 61–4–580(5). Appellant appealed the Department's determination to the ALC.

On December 4, 2014, the ALC held a contested case hearing on this matter. In an order issued on January 8, 2015, the ALC affirmed the Department's revocation of the permit. The ALC found the record contained sufficient evidence that the Department met its burden of showing the two machines contained games of chance in violation of section 12–21–2710, the machines were located on Appellant's premises, and Appellant knowingly permitted the machines to be placed on its premises in violation of subsection 61–4–580(5). Appellant filed a motion for reconsideration, which the ALC denied. This appeal followed.

## STANDARD OF REVIEW

■ "In an appeal from the decision of an administrative agency, the Administrative Procedures Act [(the APA)] provides the appropriate standard of review." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). "Pursuant to the APA, this court may reverse or modify the ALC if the appellant's substantial rights have been prejudiced because the administrative decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by an error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *MRI at Belfair, LLC v. S.C. Dep't of Health & Envtl. Control*, 394 S.C. 567, 572, 716 S.E.2d 111, 113 (Ct. App. 2011).

## LAW/ANALYSIS

### A. Proper Parties

#### 1. *Civil Forfeiture Action in the Magistrate Court*

■ Appellant argues because neither Patel nor Meenaxi, Inc. was a party to the civil forfeiture action in the magistrate court, the magistrate's orders may not be used against Patel

or Meenaxi, Inc. in any way. Thus, Appellant asserts the ALC erred in admitting the magistrate's Order of Destruction and Final Order into evidence. We disagree.

"The government's seizure of alleged contraband may arise in the context of a civil or criminal forfeiture proceeding." *Mims Amusement Co. v. S.C. Law Enf't Div.*, 366 S.C. 141, 150 n.4, 621 S.E.2d 344, 348 n.4 (2005). "The critical difference between civil forfeiture and criminal forfeiture is the identity of the defendant. In civil forfeiture, the Government proceeds against a thing (*rem*). In criminal forfeiture, it proceeds against a human being (*personam*)." *Id.* (quoting *U.S. v. Croce*, 345 F.Supp.2d 492, 494 (E.D. Pa. 2004)). We find the seized Products Direct and Gift Surplus machines were the only proper defendants in the civil forfeiture action before the magistrate. *See Union Cty. Sheriff's Office v. Henderson*, 395 S.C. 516, 518 n.1, 719 S.E.2d 665, 666 n.1 (2011) (stating because a civil forfeiture action to determine whether machines are illegal gambling machines subject to destruction is an action in rem, "the proper defendants are only the ... seized machines which are the subject of the Order of Destruction").

In addition, we find the magistrate's orders were admissible evidence in this case because they were in rem determinations about the illegal character of the video gaming machines seized from the Corner Mart. *See Ex parte Kenmore Shoe Co.*, 50 S.C. 140, 146, 27 S.E. 682, 684 (1897) ("Where the court has jurisdiction of the res, its decree in rem upon the character or status of the subject-matter is binding, not only on the parties and their privies, but also upon all persons who might have asserted an interest therein."); *id.* at 147, 27 S.E. at 684 (stating in rem judgments bind third persons and are "conclusive evidence against all the world"); *Fitchette v. Sumter Hardwood Co.*, 145 S.C. 53, 67–68, 142 S.E. 828, 833 (1928) ("A judicial record is always admissible to prove the fact that a judgment has been rendered, the time of its rendition, and the terms and effect of the judgment, for the mere fact that a judgment was given, this being a thing done by public authority, can never be considered as res inter alios acta, nor can the legal consequences of the rendition of such judgment be so considered.").

## 2. Permit Revocation Action

■ Appellant argues the ALC erred in refusing to dismiss this case on the ground that the Department failed to sue the correct parties. Specifically, Appellant argues the permit was issued to Patel and Meenaxi, Inc. but neither was made a party to this action. In addition, Appellant asserts there was no evidence at trial that "Meenaxi, Inc. d/b/a Corner Mart"—the corporate entity designated as the defendant in this action—exists. We disagree.

Patel testified his corporation, Meenaxi, Inc., owned and operated the Corner Mart. Appellant's beer and wine permit listed the following information:

Malkesh Patel

Meenaxi Inc.

713 Britton St

Anderson[,] SC 29621–2614

Corner Mart

1010 E Shockley Ferry Road

Anderson, SC 29624

Title 61 of the South Carolina Code governs "Alcohol and Alcoholic Beverages," and section 61–2–100 of the South Carolina Code (2009) describes the "[p]ersons entitled to be licensees or permittees." As used in Title 61 "and unless otherwise required by the context," the term " '[p]erson' includes an individual, a trust, estate, partnership, limited liability company, receiver, association, company, corporation, or any other group." S.C. Code Ann. § 61–2–100(H)(1) (2009). "Licenses and permits may be issued only to the person who is the owner of the business seeking the permit or license." S.C. Code Ann. § 61–2–100(A) (2009).

Based on Patel's testimony and the information listed on the permit, we find it was reasonable for the ALC to conclude that Meenaxi, Inc. owned and operated the Corner Mart—and in effect was doing business as the Corner Mart—even though the permit did not include the words "doing business as" or "d/b/a."

■ We further find that Appellant was the sole permit holder and Patel—the owner of Appellant—was simply Appel-

lant's principal and designated agent. *See* S.C. Code Ann. § 61–2–100(H)(2)(a),(g) (2009) (stating under Title 61, "a person who owns twenty-five percent or more of the value of the business entity" and "an officer of the business or entity which owns the business" are considered "principals" of the business or entity); S.C. Code Ann. § 61–2–100(F) (2009) ("Businesses licensed or permitted by the department under this title must designate with the department an agent and mailing address for service of notices."). Because the permit at issue here was held by a business rather than an individual, section 61–2–100(F) mandated that Appellant designate an agent to receive service of notices. As the Department explained at oral argument, Patel was not the permit holder—he was simply Appellant's contact person. Because Patel was not the permit holder, the Department was not required to add him as a party to this permit revocation action.

## B. Due Process

Appellant argues the ALC erred in finding the Department did not violate Patel's due process rights by failing to add him as a party to this action. Appellant also argues the Department's failure to name Patel as a party prejudiced Patel because he had no opportunity to inspect the machines destroyed upon the magistrate's order. We disagree.

■ "No person shall be finally bound by a judicial or quasi judicial decision of an administrative agency affecting private rights except on due notice and an opportunity [to] be heard . . . and he shall have in all such instances the right to judicial review." *Stono River Envtl. Prot. Ass'n v. S.C. Dep't of Health & Envtl. Control*, 305 S.C. 90, 94, 406 S.E.2d 340, 342 (1991) (quoting S.C. Const. art. I, § 22). "[P]roof of a denial of due process in an administrative proceeding requires a showing of substantial prejudice." *Palmetto All., Inc. v. S.C. Pub. Serv. Comm'n*, 282 S.C. 430, 435, 319 S.E.2d 695, 698 (1984).

As stated previously, Patel was not a proper party to the magistrate court action, and the Department was not required to add him as a party to this permit revocation action because he was not the permit holder. Therefore, Patel cannot complain of prejudice from the fact that he was not a party to those actions.

## C. Inspection of the Corner Mart

■ Appellant argues the ALC erred in failing to rule that Agent Bielawski's inspection of the Corner Mart exceeded his statutory authority under section 61–4–230 of the South Carolina Code (2009) and violated the Fourth Amendment. We disagree.

■ The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "Warrantless searches are per se unreasonable unless an exception to the warrant requirement is presented." *State v. Bailey*, 276 S.C. 32, 35, 274 S.E.2d 913, 915 (1981).

"Searches within the scope of a liquor control statute fall under the so-called 'pervasively regulated industry' doctrine as an exception to the warrant requirement." 48A C.J.S. *Intoxicating Liquors* § 740 (2014); *see also New York v. Burger*, 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) ("Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application in this context." (citation omitted)). "Because liquor license holders have certainty regarding the statutory and regulatory licensing standards and regarding their obligation to permit inspection of the licensed premises for compliance with those standards, a statutory and regulatory scheme authorizing administrative inspections provides an adequate substitute for a warrant to search those premises." 48A C.J.S. *Intoxicating Liquors* § 740 (2014). "However, a liquor inspector's statutory and regulatory authority to conduct an administrative inspection is limited to a search of the licensed premises for violations of the liquor statutes and regulations." *Id.* "Thus, agents may conduct a valid administrative search of a liquor licensee's premises when they enter the premises without a warrant to investigate the possible violation of a regulation prohibiting gambling devices on any premises where liquor is sold because the search covers an administrative, rather than a criminal, violation." *Id.*

SLED has "specific and exclusive jurisdiction and authority statewide" regarding "law enforcement, regulation enforce-

ment, and inspections under Title 61." S.C. Code Ann. § 23–3–15(A)(7) (2007). Under section 61–4–230,

A person who, upon demand of an officer or agent of the division:

(1) refuses to allow full inspection of the premises or any part of the premises which is licensed to sell beer or wine; or

(2) refuses to allow full inspection of the stocks and invoices of the licensee; or

(3) who prevents or in any way hinders an inspection is guilty of a misdemeanor. . . .

Agent Bielawski conducted a regulatory alcoholic beverage license inspection of the Corner Mart on February 26, 2013. Inside the store, Agent Bielawski observed two machines that appeared to be illegal video gambling machines. The machines had been turned off and unplugged. Agent Bielawski testified the store clerk, Ursula Dean, informed him that the store's owner had unplugged the machines and removed the cash from inside them before Agent Bielawski arrived at the Corner Mart. Agent Bielawski plugged in the machines and observed that they offered numerous illegal games, including poker, blackjack, and keno. After discovering the illegal games on the machines, he and another officer seized the two machines, and he issued a citation to "Malkesh Patel Meenaxi, Inc." for "permitting games that constitute a crime under state law." Agent Bielawski then used keys provided by Dean to open the machines and determine whether they contained money.

We find Agent Bielawski's alcoholic beverage license inspection did not violate the Fourth Amendment because the "pervasively regulated industry" exception to the warrant requirement applied. In addition, we note section 61–4–230 authorized Agent Bielawski to inspect the Corner Mart because that statute states anyone who "refuses to allow full inspection of the premises or any part of the premises which is licensed to sell beer or wine" or "who prevents or in any way hinders an inspection is guilty of a misdemeanor." This right to inspect allowed Agent Bielawski to fully search the machines to determine whether they were illegal gaming machines that might subject Appellant to liability under subsection 61–4–

580(5). Specifically, this right to inspect allowed Agent Bielawski to plug in the machines to determine whether they offered illegal games and to open the machines to determine whether they contained money. Accordingly, we find Agent Bielawski's warrantless search of the machines did not violate the Fourth Amendment.

## D. Admission of Evidence

### 1. Agent Bielawski's Investigative Report

Appellant argues the ALC erred in admitting Agent Bielawski's investigative report into evidence because the report was generated pursuant to Agent Bielawski's unlawful search [5] and because it included inadmissible hearsay statements from Dean, Agent Bielawski's subjective legal opinion that the machines were illegal, and the magistrate's non-binding conclusions.

The Department introduced the investigative report Agent Bielawski prepared after inspecting the Corner Mart. In the report, Agent Bielawski stated he noticed "two video poker machines" in the store while conducting his inspection. In addition, the report stated Dean informed Agent Bielawski that Patel "had been aware that SLED was in the area" and that Patel emptied the money from the machines, turned off the power switches, and unplugged the machines from the wall before Agent Bielawski arrived at the store. The report also stated a magistrate examined the machines, determined they were illegal video gaming machines prohibited by section 12–21–2710, and ordered their destruction.

Initially, we note, as discussed in Section A of this opinion, the magistrate's findings were admissible evidence in this case. Therefore, we find the ALC did not err in admitting the portions of the report that related to the magistrate's order.

■ We further note Agent Bielawski's report is generally admissible under the business records exception to the rule against hearsay. *See* Rule 802, SCRE ("Hearsay is not admissible except as provided by [the South Carolina Rules of Evidence] or by other rules prescribed by the Supreme Court

---

5. Because Agent Bielawski's inspection did not violate the Fourth Amendment, this argument has no merit.

of this State or by statute."); *Ex parte Dep't of Health & Envtl. Control*, 350 S.C. 243, 249–50, 565 S.E.2d 293, 297 (2002) ("Rule 803(6), SCRE, provides that memorand[a], reports, records, etc. in any form, of acts, events, conditions, or diagnoses, are admissible as long[ ] as they are (1) prepared near the time of the event recorded; (2) prepared by someone with or from information transmitted by a person with knowledge; (3) prepared in the regular course of business; (4) identified by a qualified witness who can testify regarding the mode of preparation of the record; and (5) found to be trustworthy by the court."). Agent Bielawski testified he documented his inspection of the Corner Mart in a report and he normally kept such reports in the ordinary course of business. The report was stamped "Received" by "SCDOR ABL SECTION" on March 27, 2013, which indicates Agent Bielawski prepared the report sometime within one month after his February 26, 2013 inspection.

We note that much of the content of Agent Bielawski's report is specifically excluded by the business records exception because it is Agent Bielawski's subjective opinion and judgment. *See* Rule 803(6), SCRE (providing business records are admissible but stating "that subjective opinions and judgments found in business records are not admissible"); *S.C. Dep't of Motor Vehicles v. McCarson*, 391 S.C. 136, 147 n.11, 705 S.E.2d 425, 430 n.11 (2011) (finding the business records exception "would appear to support the Department's position [that a police report is admissible]. However, a closer reading of the [business records exception] reveals that [the officer's] observations in the form of the Incident Report are specifically excluded"). Nevertheless, we find the admission of Agent Bielawski's opinion was a harmless error because there was abundant evidence that the machines were illegal—including Agent Bielawski's testimony about the games the machines offered, the magistrate's order finding the machines illegal, and Patel's testimony that when people "won a hand," he paid them the amount the machine said to pay.

Further, we find the ALC did not err in admitting the portion of the report containing Dean's statements because such employee statements are not hearsay. "A statement is not hearsay if . . . [t]he statement is offered against a party

and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." Rule 801(d)(2)(D), SCRE. The portion of the SLED report containing references to Dean's statements did not contain Agent Bielawski's subjective opinions or judgments; therefore that portion would be admissible under the business records exception since Dean's statements were admissible as admissions by a party opponent.

We find substantial evidence supported the ALC's finding that Dean was an employee and agent of Patel and Meenaxi, Inc. and made the challenged statements within the scope of her employment. Agent Bielawski testified that when he entered the Corner Mart, he identified himself to Dean, who was the store clerk on duty behind the counter. Agent Bielawski explained he knew Dean was the store clerk "[b]ecause she was behind the counter in a role that a store clerk would have in any other store just like it." In addition, Agent Bielawski testified Dean told him that Patel was her boss. Further, Dean's statements concerned a matter within the scope of her employment because they related to her boss's actions with the machines found in the store where she worked. Therefore, we find Dean's hearsay statements were admissible as statements by a party, and the reference to those statements in Agent Bielawski's report were admissible under the business records exception.

### 2. Agent Bielawski's Testimony

Appellant asserts the ALC erred in allowing Agent Bielawski to (1) testify about statements Dean made to him [6]; (2) speculate about the business arrangement between the individuals and entities identified on the permit; and (3) testify about his experience with similar machines, individuals who play such machines, and the coupons issued by the machines because he was never qualified as an expert.

---

6. During his inspection of the Corner Mart, Agent Bielawski observed the two machines had been turned off and unplugged. Agent Bielawski testified Dean informed him that the store owner had unplugged the machines and removed the cash from inside the machines before he arrived at the Corner Mart. As previously stated, Dean's hearsay statements about Patel's actions with the machines were admissible as statements by a party.

"If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill, experience or training." Rule 701, SCRE.

■ Agent Bielawski stated the words "doing business as" did not appear on the permit. However, when asked what "doing business as" meant according to the permit, Agent Bielawski responded, "Corner Mart." Agent Bielawski testified his training and experience as an alcoholic beverage inspector taught him to understand alcoholic beverage licenses and identify "what the different things on the license[s] mean." He testified he was "trained to realize that [the] bottom section is for the purpose of identifying the doing business as name[,] and having done thousands of alcoholic beverage license inspections, that is consistent in every case with the doing business license versus the actual corporate name, which is above it."

■ We find the ALC erred in allowing Agent Bielawski to give his legal conclusion that, based on his interpretation of the permit, Meenaxi, Inc. did business as the Corner Mart. However, we believe this error was harmless because the ALC could have concluded on its own, based on the other evidence presented, that Meenaxi, Inc. did business as the Corner Mart. Specifically, a photograph of the permit was admitted as an exhibit, so the ALC was able to examine the permit and make its own determination as to whether Meenaxi, Inc. did business as the Corner Mart. In addition, the ALC heard Patel's testimony that his corporation, Meenaxi, Inc., owned and operated the Corner Store.

■ Agent Bielawski also testified about his experiences with video gaming machines. Agent Bielawski stated he learned Patel unplugged the machines before he arrived at the store and, in his experience, unplugging the machines was "a very common tactic" people used. Further, Agent Bielawski testified that—based on his training, experience, previous inspections, and interviews with people who play such machines—he knew discarding the coupons generated by the

machines was "very common" because the coupons had "no value" to the players. We find the ALC did not err in admitting this testimony. Agent Bielawski was simply testifying about his knowledge as a law enforcement officer based on his previous observations. In addition, the ALC was able to draw its own conclusions irrespective of Agent Bielawski's testimony.

### E. Section 61–4–580

#### 1. Subsection 61–4–580(5)

Appellant argues the ALC erred in finding it violated subsection 61–4–580(5) by knowingly permitting an act on its premises that constituted a crime. We disagree.

Subsection 61–4–580(5) provides that "[n]o holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly . . . permit any act . . . [that] constitutes a crime under the laws of this State" to be committed on the licensed premises.

Pursuant to section 12–21–2710,

It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to [s]ection 12–21–2720 and used for gambling. . . .

We hold substantial evidence supported the ALC's finding that the Department showed the Products Direct and Gift Surplus machines contained games of chance in violation of section 12–21–2710, the machines were located on Appellant's licensed premises, and Appellant knowingly permitted the machines to be placed on its premises.

To show the machines were illegal video gambling machines, the Department presented the magistrate's Order of Destruction and Agent Bielawski's testimony and investigative report. Agent Bielawski's report stated that, while conducting a regulatory inspection of the Corner Mart, he noticed two video

gaming machines inside the store—one bearing the name "Products Direct Sweepstakes" and the other bearing the name "Gift Surplus." Agent Bielawski testified the Gift Surplus machine had poker, spinning reel games, and keno; and the Products Direct machine had poker, blackjack, and keno. Agent Bielawski also testified the magistrate examined the machines in his presence, determined the machines were illegal, and ordered their destruction.[7]

To be liable under subsection 61-4-580(5), Appellant had to have actual or constructive knowledge that the machines it allowed to be placed in its store were illegal video gambling machines. The ALC found that Patel knew or should have known the machines were illegal and that Patel's testimony to the contrary was not credible. There was substantial evidence for the ALC to make a finding that Patel knew or should have known the machines were illegal. Specifically, Patel testified if someone "won a hand," he paid the person "whatever the machine said [to] pay." Further, according to the investigative report, Patel explained to Agent Bielawski that the machines' owner, Encore Entertainment, took money from the machines every Monday or Tuesday and split the revenue equally with him. In addition, when the Department asked Patel whether he knew the machines were illegal on the day SLED inspected his store, Patel responded, "Yes, the owner called me and told me to unplug the machines." Further, Agent Bielawski's report stated Dean informed him that Patel "had been aware that SLED was in the area" and that Patel emptied the money from the machines, turned off the power switches, and unplugged the machines from the wall before SLED arrived at the store. Based on the foregoing, we find substantial evidence

---

7. Appellant argues the destruction of the machines was tantamount to spoliation and violated Appellant's due process rights. We disagree because Appellant failed to show that the State destroyed the machines in bad faith or that the machines possessed an exculpatory value apparent before they were destroyed. *See State v. Breeze*, 379 S.C. 538, 545, 665 S.E.2d 247, 251 (Ct. App. 2008) ("The State does not have an absolute duty to safeguard potentially useful evidence that might vindicate a defendant."); *id.* ("To establish a due process violation, a defendant must demonstrate (1) that the State destroyed the evidence in bad faith, or (2) that the evidence possessed an exculpatory value apparent before the evidence was destroyed and the defendant cannot obtain other evidence of comparable value by other means." (quoting *State v. Cheeseboro*, 346 S.C. 526, 538–39, 552 S.E.2d 300, 307 (2001))).

supported the ALC's finding that Appellant violated subsection 61-4-580(5).

## 2. Subsection 61-4-580(3)

■■■ Appellant argues the ALC erred in finding the machines did not fall under the "safe harbor" provision found in subsection 61-4-580(3) of the South Carolina Code (2009). We disagree.

The version of subsection 61-4-580(3) in effect at the time of the inspection provided as follows:

No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit: . . .

(3) permit gambling or games of chance except game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:

(a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;

(b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and

(c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation.

S.C. Code Ann. § 61-4-580(3) (2009).

The ALC determined the exception outlined in subsection 61-4-580(3) did not apply to the machines at issue here because the machines failed to satisfy subsection (b)'s requirement that "no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize." The ALC found the machines clearly required payment to play the games because Agent Bielawski could not play any games without inserting money

into the machine. The ALC noted Appellant argued the machines required payment for the receipt of coupons—which could be redeemed online for merchandise—and that after the coupons were purchased, the games on the machines were free to play. However, the ALC determined the coupons had no value and "[t]he coupon scheme was a thinly veiled artifice designed to conceal the fact that payment was made solely to play the games."

We find substantial evidence supported the ALC's finding that the exception set forth in subsection 61–4–580(3) did not apply to these machines because a patron could not play a game on the machines without first inserting money into the machines. Agent Bielawski testified although the faces of the machines displayed the words "no purchase necessary," the game promotions were offered in conjunction with the sale of coupons. Agent Bielawski was able to view a display image of the poker game on the screen without paying, but the machine would not allow him to play the game unless he inserted money.

We also find substantial evidence supported the ALC's finding that the coupons had no value. The investigative report stated Agent Bielawski found numerous Products Direct and Gift Surplus sweepstakes coupons discarded in the trash and lying crumpled on the floor near the machines. Agent Bielawski testified that if someone throws a coupon away, he or she cannot use the coupon to make a purchase. He also testified the fact the coupons were on the floor showed they were not being used for their intended purpose. We find the fact the coupons were discarded shows that the people who used the machines did not consider the coupons valuable enough to keep.

In addition, Agent Bielawski testified he personally examined a Products Direct sweepstakes coupon, visited the Products Direct website to determine the coupon's value, and concluded the coupon had no value. He explained that, although the coupons could "potentially" be used to purchase a product, the items on the website were overpriced "and you could easily go to a local store yourself and pick up the same sort of item at a much lower cost than what was this supposed

discount that you receive[d] from playing the [P]roducts [D]i-rect." This evidence further shows the coupons lacked value.

### F.  PENALTY

■ Appellant argues the ALC abused its discretion by determining revocation of Appellant's permit was the appropriate penalty for Appellant's violation of subsection 61–4–580(5). We disagree.

■ Section 61–4–580 provides, "[A] violation of any provision of [section 61–4–580] is a ground for the revocation or suspension of the holder's permit." "[The Department] has the authority to determine an appropriate administrative penalty, within the statutory limits established by the legislature, after the parties have had an opportunity for a hearing on the issues." *S.C. Dep't of Revenue v. Sandalwood Soc. Club*, 399 S.C. 267, 278–79, 731 S.E.2d 330, 336 (Ct. App. 2012). "[I]n assessing a penalty, [the Department] 'should give effect to the major purpose of a civil penalty,' which is 'deterrence.' " *Id.* at 279, 731 S.E.2d at 336 (quoting *Midlands Util., Inc. v. S.C. Dep't of Health & Envtl. Control*, 313 S.C. 210, 212, 437 S.E.2d 120, 121 (Ct. App. 1993)). "As an administrative agency, [the ALC] is the fact-finder and it is [the ALC's] prerogative . . . to impose an appropriate penalty based on the facts presented." *Id.* at 279–80, 731 S.E.2d at 337 (alterations in original) (quoting *Walker v. S.C. Alcoholic Beverage Control Comm'n*, 305 S.C. 209, 210, 407 S.E.2d 633, 634 (1991)).

South Carolina Revenue Procedure No. 13–2 "provides guidelines to be used by Department employees in assessing penalties for violations of the statutes and regulations governing the sale, distribution, or possession of beer, wine, and distilled spirits."[8] The Procedure is an advisory opinion that sets guidelines but "does not establish a binding norm." Revenue Procedure 13–2 provides revocation of a beer and wine permit is the appropriate penalty for "[p]ermitting any act that constitutes a crime under the laws of South Carolina (61–4–580(5))" or "[p]ermitting games of chance[,] except certain game promotions (61–4–580(3))." However, Revenue Proce-

---

**8.**  See S.C. Revenue Procedure No. 13–2, Department of Revenue (Aug. 25, 2016), https://dor.sc.gov/resource–site/lawandpolicy/Advisory% 20 Opinions/RP13–2.pdf.

dure 13–2 states the Department may reduce any penalty outlined in the Procedure when mitigating circumstances exist—specifically, "suspensions may be reduced in duration, and revocations may be reduced to suspensions with monetary penalties." "Mitigating circumstances include, but are not limited to" the following: (1) "[t]he employee committing the violation has completed a training program recognized by the Department"; (2) "[d]ocumented in-house training [is] given to the offending employee on a regular and frequent basis"; (3) "[d]ocumentation that an internal check (*e.g.*, visit to the offending store by a mystery shopper) designed to ensure compliance occurred within a reasonable period of time prior to the offense"; (4) "[a]utomated age verification programs if the violation deals with age"; and (5) "[t]he volume of sales of beer, wine or liquor at a location," given that "a location with a large number of clerks and a high volume of beer sales is more likely to have a problem with violations than a location with a small volume of beer sales." The Procedure provides, "In every case, the determination as to whether mitigating circumstances warrant a reduction in penalties is within the sole discretion of the Department."

The Department revoked Appellant's off premises beer and wine permit because Appellant violated subsection 61–4–580(5). The ALC found that, according to the Department's penalty guidelines, revocation of Appellant's permit was appropriate under the circumstances. The ALC stated that, based on its finding that Appellant knew or should have known the machines were illegal and the lack of mitigating evidence, it found no reason to deviate from the penalty listed in the guidelines and imposed by the Department.

Recognizing that it is the ALC's prerogative to impose the appropriate penalty based on the facts presented, we find the ALC did not abuse its discretion by revoking Appellant's beer and wine permit. Section 61–4–580 authorizes the ALC to revoke or suspend a beer and wine permit when the permittee violates section 61–4–580. In addition, Revenue Procedure 13–2 provides revocation of a beer and wine permit is the appropriate penalty for "[p]ermitting any act that constitutes a crime under the laws of South Carolina (61–4–580(5))" or "[p]ermitting games of chance[,] except certain game promotions (61–4–580(3))." Thus, the penalty the ALC imposed

was within the range of penalties authorized by section 61–4–580 and was the penalty prescribed by the Department in Revenue Procedure 13–2.

We also find the ALC did not abuse its discretion by declining to deviate from the Department's penalty guidelines and reduce Appellant's penalty to a fine or suspension. We find the mitigating circumstances listed in Revenue Procedure 13–2 were not present here. We recognize, however, that Revenue Procedure 13–2's list of mitigating circumstances is not exhaustive and the Department may consider other circumstances not enumerated in Revenue Procedure 13–2 when deciding whether to reduce a penalty. For example, the Department stated at oral argument that, when deciding whether to reduce a penalty from revocation to a fine or suspension, it considers whether the permittee was misled or genuinely believed the video gaming machines were legal. There was substantial evidence for the ALC to make a finding that Appellant knew or should have known the Products Direct and Gift Surplus machines in the Corner Mart were illegal. Further, there were no other non-enumerated mitigating circumstances that warranted a reduction in Appellant's penalty. We find that, under our standard of review, the revocation of Appellant's beer and wine permit, although a rather severe penalty, was not an abuse of discretion.

**CONCLUSION**

For the foregoing reasons, the ALC's decision is

**AFFIRMED.**

WILLIAMS and MCDONALD, JJ., concur.